Argued April 6, affirmed July 6, petition for rehearing denied
August 3, 1955

# LARSON *v.* PAPST
286 P. 2d 123

*Maurice Sussman,* Portland, argued the cause for appellant. With him on the brief were Easley, Whipple & McCormick and Carl Robert Wells, Portland.

*Lamar Tooze,* Portland, argued the cause for respondent. On the brief were Tooze, Kerr, Hill & Tooze, Portland.

Before WARNER, Chief Justice, and ROSSMAN, LATOURETTE and PERRY, Justices.

LATOURETTE, J.

Plaintiff appeals from an involuntary nonsuit in a personal injury case. She was employed by defendant as a laundress in defendant's home and fell down the stairway while carrying soiled clothes. Plaintiff alleges that defendant was negligent in failing to provide a laundry bag in which to collect soiled clothes, in failing to provide a handrail along either side of the stairway and in failing to provide plaintiff a safe place in which to work. Defendant denied negligence and alleged the defenses of contributory negligence and assumption of risk.

Plaintiff was employed by defendant to come to her home once a week on Fridays to do her laundry. She started to work on Friday, February 16, 1951, and

worked every Friday thereafter until the day of the accident on August 3, 1951. The laundry was always left for plaintiff on the second floor of defendant's home at the head of a flight of stairs and it was plaintiff's duty to pick up the clothes on the second floor, take them to the basement for washing, and then to iron the clothes in a room on the first floor off the kitchen. The stairway consists of 14 treads. The steps are 41½ inches wide, 9½ inches deep, with 7½ inch risers. There are walls on either side of the upper portion of the stairs. There is also a latticework at the head of the stairs on the right side as one descends which extends downward for four or five steps.

On every Friday prior to the accident the laundry reposed in a laundry bag at the top of the stairs. On the day of the accident the clothes were lying loose on the floor in the hall at the head of the stairs. There was no laundry bag in evidence. The testimony discloses, however, that in the soiled clothing there were pillow slips. Plaintiff testified on cross-examination as follows:

"Q (By Mr. Tooze) Now then, Mrs. Larson, what was in this, among the clothes that you were going to take down to the basement at the time of the accident? What garments were there, or other things? A Well, always the laundry used to be socks, underwear, bath towels, slips.

"Q Ladies slips? A Nightgowns, ladies.

"Q Pillow slips? A Yes.

"Q Now, the pillow slips were about the same size as this laundry bag, were they not? A Just about.

"Q And do you know whether or not there were more than one pillow slip in the laundry? A Not that day, I wouldn't know, because there was probably a couple of pillow slips.

"Q Yes. Now, why didn't you use a pillow slip and put the laundry in it, before you tried to carry it down? A Because I was taught to take a big piece and roll the clothes around in it. I did my best, I didn't expect to have any accident, no, no.

"Q But of course you didn't, nevertheless you knew there was a pillow slip available there, didn't you? A I just—

"Q You did, didn't you? You knew there was a pillow slip available there? A I didn't see any pillow slips that morning.

"Q You did have them there? A I used a big towel.

"Q You did have pillow slips didn't you? I say, you usually did have pillow slips? A I usually did have pillow slips, yes.

"Q You didn't examine to see if there were any there? A I got ahold of the big towel, I thought it would do.

"Q Then you rolled the laundry up there into the big towel? A That is right.

"Q As I understand it, when you picked up the laundry, you had your feet on the second tread from the top of the stairway, you were kneeling from the first tread from the top of the stairway and you reached out and gathered the laundry, put it in this towel or another large piece of material and bundled it up and then you stood up and turned to the right, took one or two steps, and then you fell, is that right? A Then I started to fall. If I took any more steps I could not say, you know.

"Q And the thing that caused your fall was some of this laundry getting entangled in your feet, is that right? (No answer by witness.)

"Q That was the cause of your fall? A Yes."

■ The first assignment of error is that the court erred in sustaining defendant's objection to plaintiff's offer in evidence of § 2.111, Part 1, Basic Safety Code.

Section 102-1228, OCLA (ORS 654.010), reads as follows:

"Every employer shall furnish employment which shall be safe for the employes therein, and shall furnish a place of employment which shall be safe for employes therein, and shall furnish and use such safety devices and safeguards, and shall adopt and use such practices, means, methods, operations and process as are reasonably adequate to render such employment and place of employment safe, and shall do every other thing reasonably necessary to protect the life and safety of such employes."

The Safety Code, promulgated by the industrial accident commission pursuant to law, provides: "Stairways not more than forty-four inches wide, and enclosed on both sides shall have at least one handrail." It is conceded in the present case that the stairway in question had no handrail. Plaintiff contends that the phrase "Every employer" is all-embracing and therefore includes employers hiring domestic help while the defendant takes the opposite view.

In *M & M Wood Working Co. v. State Industrial Accident Commission*, 176 Or 35, 155 P2d 933, we had occasion to consider the provisions of the statute in question. We there said:

"* * * Having in mind that the purpose of such 'safety program' is for the protection of workmen engaged in hazardous employment, we are unable to conceive of any reasonable ground for making the classification. * * *"

It is quite obvious that a laundress carrying laundry down a stairway is not engaged in a hazardous employment. There is no merit in this assignment.

■ The next assignment of error is that the trial court erred in entering judgment of involuntary non-

suit. In the order of nonsuit the trial court ascribed no reasons for entering the same. The decisive question before us is whether or not there was sufficient evidence of negligence on the part of the defendant to warrant the submission of the case to a jury.

■ Plaintiff alleges that defendant was negligent in failing to provide a stairway handrail and in failing to provide a safe place in which to work. There is no claim that there was any defect in the stairway itself, both allegations of negligence having reference to the handrail.

There is no common-law duty to install a handrail along a stairway. *Eiban v. Widsteen,* 31 Wash2d 655, 198 P2d 667; *Jellum v. Normanna Lodge No. 3,* 31 Wash2d 846, 199 P2d 108; *Kahler v. Marchi,* 307 Ill App 23, 29 NE2d 854; *Mammana v. Easton Nat. Bank,* 338 Pa 225, 12 A2d 918.

■ It is common knowledge that countless homes throughout the land are without stairway handrails. To have them is the exception rather than the rule. In our view there is no room for any reasonable difference of opinion as to the inference of negligence for the failure to have them.

As to the failure of defendant to provide plaintiff with a laundry bag for use in carrying the soiled clothes to the basement, we are not advised of any legal duty on the part of defendant to so do. From time immemorial soiled clothes have been carried in pillow slips, laundry bags, towels, sheets, shirts and long underwear. There was available at the time of the accident any number of the above items. Plaintiff testified that she was taught "to take a big piece and roll the clothes around in it." She therefore shows that carrying equipment was readily available. There are a number of cases holding that a party cannot be

found guilty of negligence for failing to furnish a particular piece of equipment if there were actually provided a suitable substitute. *Wintermute v. Or.-Wash. R. & N. Co.,* 98 Or 431, 194 P 420; *Barker v. Portland Traction Co.,* 180 Or 586, 173 P2d 288, 178 P 2d 706; *Ireland v. E. J. Pinney, Inc.,* 91 NH 323, 18 A2d 750; *Brooks v. Kansas City Gas Co.,* 343 Mo 1226, 127 SW2d 427.

■ Plaintiff claims that there was sufficient evidence to take the case to the jury because defendant admitted that the accident was her fault. Had there been any substantial evidence in the record to support one or more of the acts of negligence charged against defendant, then her admission of fault would have been of value in fixing liability; but under the facts and circumstances of this case and under the applicable law such admission could not and did not of itself establish negligence. Moreover, it is manifest that the failure to furnish the plaintiff with a laundry bag could not possibly have been the proximate cause of the accident because it was her failure to securely tie the towel ends that caused the laundry to fall out. What she used was adequate had she tied it securely. That she did not so do was her own act, and if negligent, her own negligence.

■ To fix liability in a case of this kind, it not only is necessary to establish by the evidence one or more of the acts of negligence charged but also that such act or acts of negligence proximately caused the accident *Lemons v. Holland,* 205 Or 163, 284 P2d 1041, 286 P2d 656; *Owens v. Holmes,* 199 Or 332, 337, 261 P2d 383; *Quetschke, Adm'x. v. Peterson and Zeller,* 198 Or 598, 606, 258 P2d 128; *Wintersteen v. Semler,* 197 Or 601, 620, 250 P2d 420, 255 P2d 138.

Judgment is affirmed.